# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STEVEN ELLISON,

        Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.

Civil Action No. 16-602
DAR

## MEMORANDUM OPINION

Plaintiff Steven Ellison ("Plaintiff") commenced this action against the Acting Commissioner of Social Security ("Defendant"), pursuant to 42 U.S.C. § 405(g), seeking reversal of an Administrative Law Judge's decision denying Plaintiff's claim for Supplemental Social Income Benefits. *See* Complaint (ECF No. 1) at 1. Pending for determination by the court are Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Motion") (ECF No. 10) and Defendant's Motion for Judgment of Affirmance ("Defendant's Motion") (ECF No. 11).[2] Upon consideration of the motions, the memoranda in support thereof and opposition thereto, the administrative record, and the entire record herein, the court will grant, in part, Plaintiff's Motion and deny Defendant's Motion.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, who currently serves as the Acting Commissioner of Social Security for the Social Security Administration, will be substituted for the former Acting Commissioner, Carolyn W. Colvin.

[2] The parties have consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Civil Rule 73.1. *See* Consent (ECF Nos. 13 and 18).

**FACTUAL BACKGROUND**

On September 13, 2012, Plaintiff applied for Supplemental Security Income Benefits under Title XVI of the Social Security Act, alleging December 5, 2005 as the onset date of his disability. Plaintiff's Memorandum (ECF No. 10-1) at 1. Plaintiff cited gout, arthritis, swollen joint and hypertension as the bases for his claim of disability. *Id*. The Social Security Administration ("SSA") denied Plaintiff's disability claims initially and upon reconsideration. *Id*.

Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Said hearing took place on June 24, 2014. *Id*. at 2. On November 5, 2014, the ALJ denied Plaintiff's claim, finding that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 2. In the decision, the ALJ utilized the five-step process outlined in 20 C.F.R. § 416.920 to determine whether Plaintiff was disabled. Administrative Record ("AR") (ECF No. 7-3) at 5.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. *Id*. at 7. At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: "gouty arthritis and osteoarthritis and allied disorder." *Id*. At Step Three, the ALJ found that Plaintiff's impairment did not meet or medically equal the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 1.02. *Id*. at 8.[3] At Step Four, the ALJ conducted a residual functional capacity assessment of the Plaintiff and found that Plaintiff had the residual functional capacity to perform less than full range of medium work as defined in 20 CFR 416.967(c), but could frequently balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and occasionally climb ropes, ladder and scaffolds. *Id*. Additionally, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id*. at

---

[3] The ALJ found that Plaintiff's disability did not meet or medically equal the relevant listing, primarily because Plaintiff's disability did not prevent him from ambulating. *Id*. at 8.

12. At Step Five, after considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), the ALJ determined that Plaintiff was able to perform other work and thus, was not disabled, as defined by the Social Security Act. *Id*. at 17-18.

Thereafter, Plaintiff sought review of the decision by the Appeals Council. Plaintiff's Memorandum (ECF No. 10-1) at 2. The Appeals Council rejected Plaintiff's request, concluding that there was no basis for granting review of the ALJ's denial. *Id*.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that the ALJ's decision must be reversed because his assessment of Plaintiff's RFC was not supported by substantial evidence. Primarily, Plaintiff asserts that the ALJ failed to consider Plaintiff's "periodic flare-ups of gouty arthritis[,]" Plaintiff's "primary impairment[,]" when determining Plaintiff's RFC. Plaintiff's Memorandum at 5. More specifically, Plaintiff asserts that the ALJ's failure to consider the "frequency and duration" of Plaintiff's flares resulted in an inaccurate analysis of and determination with respect to Plaintiff's RFC. Plaintiff's Reply (ECF No. 16) at 4. Plaintiff asserts that during his episodes of flares, he has difficulty performing basic tasks, and the ALJ should have assessed Plaintiff's ability to sustain gainful employment during a flare-up period to accurately discern Plaintiff's RFC. Plaintiff's Memorandum at 5 ("His flare-ups primarily impact his hands and his feet, and limit his abilities to stand and walk, perform fine and gross manipulation, and perform activities of daily living."). According to Plaintiff's testimony, the flares induced by his condition occur "between one time per week and one time per month" and "the length of the gout flare[] was reported to be anywhere from a few days to two weeks." *Id*. at 6.

Given the significant limitation of motor movements caused by his reoccurring flares, Plaintiff argues that the vocational expert could not have considered these impairments and still

found Plaintiff capable of performing gainful employment activity, particularly after stating during the administrative hearing that "if an individual was absent from work as little as two days per month, the individual would not be employable." Plaintiff's Reply at 4 (citing AR at 78). Plaintiff concludes that as a result of the ALJ's failure to consider the effect of Plaintiff's gout flares on his ability to sustain substantial gainful employment, the RFC finding that Plaintiff could perform "medium exertional" work is unsupported by substantial evidence in the record. *See* id. at 23.

In response, Defendant asserts that the ALJ's RFC determination, in which the ALJ concluded that Plaintiff could perform a limited range of medium work including standing, sitting or walking for six hours in an eight-hour day, was supported by substantial evidence in the record. As argued by Defendant, substantial evidence existed in the record to support the ALJ's determination, including the medical opinion of Dr. Randi Abramson (excluding her April 2012 letter), Dr. Fizzeh Nelson-Desiderio, a disability determination services physician, and Plaintiff's own testimony concerning his ability to perform daily activities. Defendant's Memorandum at 11-12.

In reply, Plaintiff reasserts the aforementioned arguments and challenges Defendant's attempt to apply a post-hoc rationalization to the ALJ's decision to deny Plaintiff's claim for benefits. In response, Defendant asserts that Plaintiff's claims lack merit and the ALJ properly considered the evidence in the record and determined, based on substantial evidence, that Plaintiff was not disabled under the statutory definition outlined by the SSA.

## STATUTORY FRAMEWORK

The Social Security Act of 1935 ("the Act") established a framework to provide "disability insurance benefits" to eligible individuals and "supplemental security income" to individuals who

have attained the age of 65, are blind, or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The Act defines "disability" for non-blind individuals as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905. A "disabled" individual is eligible for supplemental security income if he or she meets additional statutory requirements concerning income and resources. 42 U.S.C. § 1382(a). The SSA has promulgated regulations, pursuant to the Act, outlining a five-step process for determining disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity." If so, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

Second, if the claimant is not engaging in substantial gainful activity, the agency determines whether the claimant has a "severe medically determinable physical or medical impairment that meets the duration requirement . . . or a combination of impairments that is *severe* and meets the duration requirement . . . ." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Third, if deemed severe, the next question becomes whether the impairment "meets or equals one of the *listings*" in 20 C.F.R. § 404.1525(a) (emphasis added). The "listings" refer to a "listing of impairments" which "describes for each of the major body systems impairments that [the agency] considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id*.

Fourth, if the claimant's impairment does not satisfy one of the listings, the agency assesses the claimant's "residual functional capacity" to see whether the claimant is still capable of

performing "past relevant work." 20 C.F.R. § 404.1520. If so, the claimant is not disabled. *Id.* Residual functional capacity is "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545.

Fifth, and finally, if the claimant is unable to perform his or her "past relevant work," the agency evaluates the claimant's "residual functional capacity and . . . age, education, and work experience to see if [he or she] can make adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). If the claimant cannot make such an adjustment, the agency finds that the individual is "disabled." 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

**APPLICABLE STANDARD OF REVIEW**

A claimant may seek judicial review in a district court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). The Commissioner's ultimate determination will not be disturbed "if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). In other words, a "district court's review of the [SSA] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Broyles v. Astrue*, 910 F. Supp. 2d 55, 60 (D.D.C. 2012) (citations omitted). Substantial evidence is such relevant evidence as "a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The test requires "more than a scintilla, but can be satisfied by something less than a preponderance of evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law,'" *Jeffries v. Astrue*, 723 F. Supp. 2d 185, 189 (D.D.C. 2010) (quoting *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation mark and alteration omitted) (noting that the inquiry upon judicial review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits"); *Guthrie v. Astrue*, 604 F. Supp. 2d 104, 112 (D.D.C. 2009) (citation omitted) (noting that the court is "not to review the case 'de novo' or reweigh the evidence"). The plaintiff bears the "burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Charles v. Astrue*, 854 F. Supp. 2d 22, 27-28 (D.D.C. 2012).

**DISCUSSION**

For the following reasons, the court finds that the ALJ's findings with respect to the ALJ's consideration of Plaintiff's limitations caused by his gout condition are supported by substantial evidence in the record, but that the hypothetical posed to the vocational expert and the ALJ's subsequent findings, which contradict the testimony of the vocational expert, are not.

I.  *The Administrative Law Judge Appropriately Considered the Limitations Caused by Plaintiff's Episodic Flares When Determining the RFC.*

Plaintiff argues that the ALJ's failure to consider the physical limitations caused by Plaintiff's episodic flares resulted in an RFC determination that inaccurately depicts Plaintiff's

work capabilities. The ALJ's decision, however, belies this contention. At Step Four of his analysis, the ALJ opined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

AR at 20. The ALJ went on to describe, in detail, his consideration of Plaintiff's physical limitations caused by his gout flares.

> On September 26, 2012, Dr. Randi Abramson stated that the claimant's gout flares-up twice a month. . . . On September 17, 2013, Dr. Randi Abramson stated that the claimant had no flare-ups of gout since taking Allopurinol. . . . Dr. Abramson stated that when the gout or osteoarthritis are active, it impacts the claimant's ability to perform fine and gross motor movements. However, Dr. Abramson states further that the arthritis flares only about once per month and her treatment records reflect that the claimant's gout is well-controlled . . . . The claimant's physician stated that the claimant had no flare-ups after increasing his medications (Exhibit 8F/page2; testimony).

*Id.* at 20-23.

Social Security Ruling 96-8p requires that the RFC assessment include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p, 1996 WL 374184 (July 2, 1996). The narrative must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; . . . a resolution of any inconsistencies in the evidence as a whole; and . . . a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work. *Id.* In assessing RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an *ordinary* work setting on a *regular* and continuing basis. *Id.* (emphasis added). In addition,

the ALJ is required to describe the *maximum amount* of each work-related activity a claimant can perform, based on the evidence available in the case record. *Id* (emphasis added). The ALJ must also explain "how [he or she] considered and resolved any material inconsistencies or ambiguities evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination." *Butler*, 353 F.3d at 1000 (internal citations omitted).

Here, the ALJ found the April 2012 letter, in which Dr. Abramson concluded that Plaintiff could only perform part-time work, to be inconsistent with her own notes, and the opinion of the other examining physician. The record reflects that it was the inconsistency of this letter with other evidence in the record which occasioned the ultimate determination by the ALJ. Plaintiff's flares were addressed in the decision and the ALJ determined that while the flares occurred at least once a month and occasionally lasted as many as five days, the flares did not preclude Plaintiff from working full time. Moreover, Plaintiff's testimony and the notes of Dr. Abramson confirmed that Plaintiff's flares are controlled, if not eliminated, when Plaintiff routinely complies with his prescribed medication and adheres to his prescribed dietary and alcohol restrictions.[4] Thus, the court finds that, given the inconsistencies discovered in the record, the ALJ appropriately considered the physical effects of Plaintiff's flares on his ability to work when determining his RFC. Further, the ALJ's decision to find Plaintiff capable for performing full time work at a medium exertional level was supported by substantial evidence in the record.

---

[4] While Plaintiff describes any consideration of the claimant's adherence to his prescribed medical treatment as "post-hac rationalization [,]" it is evident from the record that the ALJ considered Plaintiff's compliance with his medical treatment as a factor to determine whether the flares inhibited Plaintiff from performing full time work. While not explicitly stated as the basis for his RFC determination, the ALJ found that Dr. Abramson's statement that Plaintiff's flares ceased once on Allopurinol contradicts Plaintiff's claim that his gout flares prevented him from performing substantial gainful employment. *Id.* at 21 ("The above medical evidence of record contradicts the claimant's allegations of having disabling limitations from gout and osteoarthritis, which, according to the claimant, have prevented him from being employed at the substantially gainful activity level."); *see also* 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . .").

## II. The ALJ Erred in Failing to Consider the Vocational Expert Comments Regarding the Limitations Caused by Plaintiff's Gout Flares When Determining Whether Jobs Consistent with Plaintiff's RFC Exist in the National Economy.

Plaintiff challenges the ALJ's determination that based on the vocational expert's testimony, and after consideration of Plaintiff's age, education, work experience, and residual functional capacity, he is not disabled under the terms of the Social Security Act. At Step 5 of the SSA analysis, an ALJ will "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's past relevant work and/or other work within the remaining occupational base (SSR 85–15)" and pose "hypothetical questions [that] reflect the specific capacity/limitations established by the record as a whole." *Lockard v. Apfel*, 175 F. Supp. 2d 28, 31 (D.D.C. 2001). Reliance on the testimony of a vocational expert, however, is erroneous, when an ALJ "fails to accurately describe the claimant's physical impairments in any question posed to the expert." *Sloan v. Astrue*, 538 F. Supp. 2d 152, 155 (D.D.C. 2008) (citing *Butler*, 353 F.3d at 1000, 1005–1006; *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) ("Should an ALJ look to the opinion of a VE in determining the claimant's ability to perform other work than he had done before, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert.").

During the administrative hearing, the ALJ posed the following hypothetical to the vocational expert:

> Assume that a hypothetical person who has same age, education, and work experience as the claimant, and who has the capacity to do sedentary work, unskilled, with a sit/stand option, at will; limited general public contact. Can you identify any jobs such a hypothetical person can perform on a sustained basis, and which jobs exist in significant numbers in the national economy?
>
> . . .
>
> Assume that a hypothetical person who has same age, education, and work experience as the claimant, and who has the capacity to do

> light work, unskilled, with a sit/stand option, at will; limited general public contact. Can you identify any jobs such a hypothetical person can perform on a sustained basis, and which jobs exist in significant numbers in the national economy?

AR at 76.

In response to the ALJ's hypothetical question, the vocational expert identified several occupations in both the sedentary, unskilled category (*i.e.*, inspector and finish-machine operator) and the light work, unskilled category with a sit/stand option (*i.e.*, security worker and laundry worker) that a person with the corresponding RFC could perform. *Id*. at 77.[5] Following the vocational expert's response to the ALJ's question, Plaintiff's counsel asked the vocational expert:

> [I]s it your experience that someone, hypothetically, who would miss, let's say, a week a month without notice, without being able to provide the employer with notice, and maybe would have to leave the job the same day without being able to provide notice, would that person be able to remain employed in these positions?

The vocational expert replied "no" to that question. *Id*. However, the ALJ opined that, "based on the testimony of the vocation expert . . . claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[]" and a "finding of 'not disabled' is therefore appropriate under the framework of the above-cited rules." *Id*. at 24.

The court finds a gap between the testimony of the vocational expert and the findings of the ALJ. The ALJ not only posed a hypothetical which was infirm, but also apparently ignored the expert's response to the questioning of Plaintiff's counsel, when determining Plaintiff's ability to perform substantial gainful activity. In *Lockard v. Apfel*, 175 F. Supp. 2d 28, 33 (D.D.C. 2001),

---

[5] The ALJ's decision identifies an alternative set of jobs available to the Plaintiff in the national economy that differs, in part, from those identified by the vocational expert during his testimony, to include: janitor, warehouse worker and packer (in the medium, unskilled work category) and machine tender and laundry worker (in the light, unskilled work category). *See* AR at 23-4.

this court held that "[i]f the ALJ ha[s] the obligation[] to pose a hypothetical that accurately represents the claimant's physical and mental conditions . . . , then it must follow that his hypothetical question to the vocational expert present a faithful summary of the treating physician's diagnosis unless the ALJ provides good reason to disregard that physician's conclusions."

While arguably insufficient at Step Four to constitute a limitation that completely negates Plaintiff's ability to work, the physical limitations occasioned by Plaintiff's episodic flares were essential to the description of Plaintiff's physician condition and a necessary factor for the vocational expert to consider in order to render an accurate determination. The testimony of Plaintiff and the medical records of Dr. Abramson, stating that Plaintiff's episodic gout flares limit his motor movements, were uncontroverted by the evidence in the record. AR at 20-21 ("On October 12, 2012, Dr. Abramson stated that the claimant exhibited mild gout limitations.") ("Dr. Abramson stated that when the gout or osteoarthritis are active, it impacts the claimant's ability to perform fine and gross motor movements."); *see also* AR at 71-74 (testimony of Plaintiff). Thus, without evidence to the contrary, or substantial reason to exclude the flares from a description of Plaintiff's condition, the ALJ's failed to accurately summarize Plaintiff's condition. Further, the ALJ's determination, proposedly based on the vocational expert's testimony, in fact, contradicts the vocational expert's testimony that an individual who suffered from occasional physical limitations that caused him to be absent from work unexpectedly and for a period of days would be unemployable in the occupations listed by the vocational expert.

As a result, the court finds that substantial evidence does not support the ALJ's findings with regard to Plaintiff's ability to perform the jobs identified by the vocational expert. Thus, the court will remand the matter to allow the ALJ to pose an accurate description of Plaintiff's physical

condition, to include the limitations caused by his gout flares, to a vocational expert, and thereafter, to make further findings regarding whether jobs exist in the national economy that Plaintiff can perform.

## CONCLUSION

It is therefore, this 23rd day of June, 2017,

**ORDERED** that Plaintiff's Motion for Judgment of Reversal (ECF No. 10) is **GRANTED IN PART**, and that this matter is remanded for further findings in accordance with the instant Memorandum Opinion; and it is

**FURTHER ORDERED** that Defendant's Motion for Judgment of Affirmance (ECF No. 11) is **DENIED**.

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge